

**12 CIV 9456**

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN MARSCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>RUI FENG, JIANGO "MYLES" GAO, MENG "MARIA" TANG, and SILVERCORP METALS, INC.<br><br>Defendants. | Case No:<br><br><u>ECF CASE</u><br><br><u>CLASS ACTION</u><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

1.     Plaintiff Alan Marsch, by his undersigned attorneys, for his complaint against defendants alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters.

## I. NATURE OF THE ACTION

2.     This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased the publicly traded common stock of Silvercorp Metals, Inc., from June 24, 2010, to September 13, 2011, inclusive (the "Class Period").

3.     Silvercorp is a British Columbia, Canada, corporation, whose operations are located principally in China, and whose shares trade on the New York Stock Exchange (the "NYSE") and the Toronto Stock Exchange.

4.     Throughout the Class Period, Silvercorp overstated the quality and quantity of its ore reserves. Silvercorp's own filings with the Chinese authorities demonstrated that it had lower production than its filings with the SEC.

5.     Short seller alfredlittle.com first publicized that Silvercorp had been misleading the investing public about the quality and quantity of its minerals production.

6.     When the truth regarding the quantity and quality of Silvercorp's minerals production was disclosed, Silvercorp's stock price fell, damaging investors.

7.     In response to the truthful disclosures in the alfredlittle.com report, Silvercorp initiated a campaign to harass persons involved with alfredlittle.com.

8.     As revealed by Canada's leading newspaper The Globe and Mail, Silvercorp's campaign including paying Chinese police to arrest a Canadian national in China who had investigated Silvercorp. Canadian citizen Huang Kun was held in China for over eight months. He spent much of this time in prison.

9.     As this Complaint is filed, the Royal Canadian Mounted Police's Anti-Corruption Unit is assessing an investigation of Silvercorp for criminal violations of the Corruption of Foreign Public Officials Act.

10. Plaintiff purchased Silvercorp stock on the NYSE and was damaged thereby.

## II. JURISDICTION AND VENUE

11. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

13. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

14. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III. PARTIES

15. Plaintiff Alan Marsch purchased Silvercorp securities and has been damaged thereby. His PSLRA certification is attached as Exhibit 1 to this Complaint and is incorporated by reference.

16. Defendant Rui Feng has been Silvercorp's CEO and the Chairman of its Board since September 4, 2003. Defendant Feng is a citizen of Canada.

17. Defendant Jiango "Myles" Gao has been President, Chief Operating Officer, and a Director of Silvercorp since March 2003. Defendant Gao is a citizen of Canada.

18. Defendant Meng "Maria" Tang has been Silvercorp's Chief Financial Officer since October 1, 2008. Defendant Tang is a citizen of Canada.

19. Collectively, Defendants Feng, Gao, and Tang are the "Individual Defendants".

20. Defendant Silvercorp is a British Columbia, Canada, corporation whose shares are traded on the NYSE and the Toronto Stock Exchange. Silvercorp is an SEC reporting company.

Silvercorp's executive offices are located in British Columbia, but substantially all of its operations take place in China. The following chart shows Silvercorp's corporate structure:



21. Silvercorp operates four silver, lead, and zinc mines in the Ying District in the western Henan Province of China. Silvercorp purports to be China's largest primary silver producer.

22. During the Class Period, Silvercorp operated its only revenue-generating subsidiaries through its subsidiaries Henan Found Mining. Co., Ltd., and Henan Huawei Mining Co., Ltd. Therefore, Silvercorp's revenues should not be greater than the combined revenues of Henan Found and Henan Huawei.

23. Henan Found's primary revenue-generating asset is the Ying Mine, a/k/a the SGX mine, a/k/a the Ying Project. The Ying Mine accounted for over 85% of Henan Found's silver

3

production in the year ended March 31, 2011, and over 96% of Henan Found's silver production in the year ended March 31, 2010.

## IV. DEFENDANTS' MISCONDUCT

24. The Class Period begins on June 24, 2010, when Silvercorp filed an annual report on Form 40-F[1] that contained false and misleading statements. The 2010 40-F and its exhibits falsely claimed that during the year ended March 31, 2010:

   a. The Ying mine produced approximately 118.19 tonnes[2] of silver;

   b. The Ying mine produced 24,732 tonnes of lead; and

   c. The Ying mine produced 6,382 tonnes of zinc.

25. Silvercorp made these statements in the Management's Discussion and Analysis section of its filing and exhibit.

26. Defendants Feng and Tang each separately represented that:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this report[.]

27. On December 7, 2010, Silvercorp filed a Prospectus Supplement with the SEC to register 9,200,000 shares to be sold for $116,840,000, including underwriters' over-allotment option, in a "bought deal" (i.e., firm-commitment) offering. The Prospectus Supplement incorporated by reference Management's Discussion and Analysis from the June 24, 2010 40-F. The Prospectus Supplement was signed by Defendants Feng and Tang.

28. The Offering closed on December 14, 2010.

---

[1] SEC Form 40-F is a form for annual reports filed with the SEC by Canadian issuers.
[2] I.e., metric tonnes.

4

29. On June 3, 2010, Silvercorp filed its annual report on Form 40-F for the year ended March 31, 2011.

30. The 2011 40-F and its exhibits falsely claimed that during the year ended March 31, 2011:

a. The Ying mine produced 130.63 tonnes of silver;

b. The Ying mine produced 23,995 tonnes of lead; and

c. The Ying mine produced 6,078 tonnes of zinc.

31. As with the 2010 40-F, Defendants Feng and Tang each separately represented that:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this report[.]

## V. THE TRUTH CONCEALED BY DEFENDANTS' MISCONDUCT IS REVEALED, CAUSING INVESTORS' LOSSES

32. On September 13, 2011, short-selling analyst firm alfredlittle.com issued a report written by Jon Carnes that called into question the veracity of Silvercorp's claims regarding the Ying Mine.

33. Among other claims, the September 13 report highlighted filings made by Henan Found with the Henan Provincial Land & Resource Bureau, an agency of the Chinese government (the "Henan Provincial Bureau").

34. According to Mr. Carnes, Henan Found reported to the Henan Provincial Bureau that in the year ended December 31, 2010, the Ying mine had actually produced:

a. 32.17 tonnes of silver;

b. 5,911.40 tonnes of lead; and

   c. 5,162.80 tonnes of zinc.

   35.   Thus, Silvercorp's SEC filings overstated its actual production of silver by 306%, its production of lead by 306%, and its production of zinc by 18%.

   36.   Silvercorp's stock price fell from a close of $7.84 on September 13 to $6.30 on September 14, or almost 20%, damaging investors. The stock price drop was on heavy volume.

   37.   On September 14, 2012, Silvercorp responded to Alfred Little's report. In the course of doing so, Silvercorp admitted that the figures obtained by Mr. Carnes from the Henan Provincial Bureau accurately represented the filings Silvercorp had made to the Henan Provincial Bureau.

## VI.  ADDITIONAL FACTS PROBATIVE OF SCIENTER

   38.   Soon after publication of Mr. Carnes's report, Silvercorp began prosecuting a vendetta against Mr. Carnes and others who had truthfully revealed its financial condition.

   39.   Silvercorp sued Mr. Carnes along with several others in New York State Supreme Court.

   40.   As an adjunct to its lawsuit in New York State Supreme Court, Silvercorp used its influence with the local Chinese government to cause it unlawfully to detain Huang Kun, a Canadian citizen and one of the in-country researchers who had assisted Mr. Carnes in drafting his report.

   41.   According to an in-depth report published on September 8, 2012, by the Globe and Mail, Canada's leading newspaper, Silvercorp funded the "investigation" into, and unlawful detention of, Mr. Huang.

   42.   The Globe and Mail report highlighted that hotel receipts regarding rooms used by Police investigators were made payable to Henan Found -- not the Police. The report noted that a black Lexus 240 used to transport Mr. Huang 150 kilometers belonged to Henan Found -- not the Police. The report also quoted Mr. Huang as saying that in their interrogation of him, Police investigators received orders over the phone from sources that "had to be from" Silvercorp.

6

43. According to Mr. Huang, the officer told him:

> You have to take responsibility for what you have done. This company is very powerful at the local level. They pay a lot of tax to the local government and Luoyang is a very poor city. They contribute a lot to the local economy.

44. According to experts consulted by the Globe and Mail, Silvercorp's conduct could violate both Chinese and Canadian law.

45. According to a later article dated September 17, 2012, the Royal Canadian Mounted Police is mulling whether to investigate Silvercorp's misconduct in the wake of the Globe and Mail report.

46. While Defendant Rui denied involvement, his denial lacked credibility and in fact explicitly highlighted the dangerous influence Silvercorp had over local police:

> These [the short-sellers including Mr. Carnes and Mr. Huang] are bad people for me. **They are my enemy**. I am raped. I tell police. Right? The police sometimes do contact me and with us. We are victims. **We are big taxpayers in the Luoyang County**.

[emphasis added]

47. Indeed, according to Mr. Carnes, the local Chinese Police made documents it unearthed available to Silvercorp for its case against the short-sellers.

48. In an application for letters rogatory filed in the New York State Supreme Court action on March 5, 2012, Silvercorp sought to compel the Royal Bank of Canada and various affiliates the names, account numbers, and associated contact information linked to what Silvercorp claimed were 44 different phone numbers.

49. One of the numbers was Mr. Carnes's wife's Asia Air Miles number.

50. According to Mr. Huang, the information was taken from the contacts he keeps on his laptop when the Police seized it.

51. On March 19, 2012, Silvercorp inexplicably withdrew its application.

## VII. PLAINTIFF' CLASS ACTION ALLEGATIONS

7

52. Plaintiff bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of Silvercorp during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the present and former officers and directors of Silvercorp and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Silvercorp's stock was actively traded on the NYSE.

54. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believe that there are at least hundreds, if not thousands, of members in the proposed Class. Members of the Class may be identified from records maintained by Silvercorp or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

55. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, and financial performance of Silvercorp; and

   c. to what extent the members of the Class have sustained damages and the proper measure of damages.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VIII. RELIANCE PRESUMPTION

59. At all relevant times, the market for Silvercorp common stock was an efficient market for the following reasons, among others:

   a. Silvercorp stock met the requirements for listing, and was listed and actively traded on the NYSE under ticker symbol "SVM". The NYSE is a highly efficient and automated market;

   b. As a regulated issuer Silvercorp filed with the SEC periodic public reports and was eligible to file F-3 registration statements with the SEC during the Class Period;

   c. Silvercorp regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

   d. Silvercorp was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period;

   e. Unexpected material news about Silvercorp was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

## FIRST CAUSE OF ACTION
### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5

**Promulgated Thereunder Against Defendants Silvercorp, Feng, Gao, and Tang**

60. Plaintiff incorporates ¶¶1-59 as if fully set forth herein.

61. This cause of action is asserted against all Defendants.

62. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Silvercorp's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, individually and as a group, took the actions set forth herein.

63. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Silvercorp as specified herein.

64. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Silvercorp's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Silvercorp and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Silvercorp securities during the Class Period.

65. Each of the defendants' primary liability, and controlling person liability, arises from the following: (a) defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and

reporting of the Company's internal budgets, plans, projections and/or reports; (c) defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and (d) defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

66. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Silvercorp's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' false and misleading statements during the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

67. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Silvercorp's securities was artificially inflated during the Class Period.

68. In ignorance of the fact that market prices of Silvercorp's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Silvercorp's securities during the Class Period at artificially high prices and were damaged thereby.

69. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Silvercorp's financial results and condition, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Silvercorp securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

70. By virtue of the foregoing, the defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

71. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

72. This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

73. Plaintiff incorporates ¶¶1-59 as if fully set forth herein.

74. This second cause of action is asserted against each of the Individual Defendants.

75. The Individual Defendants acted as controlling persons of Silvercorp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public

filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

76. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

77. As set forth above, Silvercorp violated Section 10(b) and Rule 10b-5 by their acts and Silvercorp as alleged in this Complaint.

78. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

79. This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff pray for relief and judgment, as follows:

    a.    Determining that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff' counsel as Class Counsel;

    b.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

   c.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

   d.  Awarding Plaintiff such equitable/injunctive and further relief under Section 20A of the Exchange Act; and

   e.  Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: December 24, 2012       Respectfully submitted,

                **THE ROSEN LAW FIRM, P.A.**

                _/s/ Laurence Rosen_
                Laurence M. Rosen, Esq. (LR5733)
                lrosen@rosenlegal.com
                Phillip Kim, Esq. (PK 9384)
                pkim@rosenlegal.com
                THE ROSEN LAW FIRM, P.A.
                275 Madison Avenue, 34th Floor
                New York, NY, 10016
                Telephone: (212) 686-1060
                Facsimile: (212) 202-3827